J-S25045-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF: S.A.S., JR. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: S.S., SR., NATURAL FATHER | No. 38 WDA 2015 |

Appeal from the Order December 10, 2014
in the Court of Common Pleas of Lawrence County
Orphans' Court at No.: 20004 of 2014

BEFORE: BENDER, P.J.E., STABILE, J., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.: **FILED JUNE 02, 2015**

S.S., Sr. (Father) appeals the order of the Court of Common Pleas of Lawrence County, entered on December 10, 2014, that terminated his parental rights to his son, S.A.S., Jr. (Child), born in October of 2011. We affirm.[1]

Lawrence County Children and Youth Services (CYS) first became involved with Child when Father and Mother took him to a hospital on July 24, 2012, "and claimed worms were coming out of [his] skin." (N.T. Involuntary Termination, 5/08/14, at 18). The hospital referred Child to CYS, which took legal and physical custody of Child on July 25, 2012. The

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] N.R. (Mother) consented to the termination of her parental rights to Child.

trial court adjudicated Child dependent and placed him in the custody and control of CYS on August 9, 2012. CYS placed Child in kinship care with the consent of his parents. Child has resided in the same kinship home throughout his placement and has had no contact with Father since October 17, 2012.

CYS created a Child Permanency Plan (CPP) for Father that Father signed on September 19, 2012. The CPP goals established for Father were: (1) complete a parenting course through Children's Advocacy Center; (2) obtain a drug and alcohol assessment and follow any and all recommendations; (3) obtain and maintain a safe, stable home environment for himself and Child; (4) visit Child regularly; and (5) sign necessary releases for CYS.

Father reviewed the plan with CYS caseworker, Gary Zarilla, and informed him that he would soon go to jail, and that he would not be able to complete the goals of the plan prior to his incarceration.

Father was incarcerated in November 2012 and, in January of 2013, was sentenced to a term of incarceration of not less than three to not more than six years related to his operation of a methamphetamine lab in the home. Father's anticipated release date is November of 2015. CYS revised Father's CPP goals after his incarceration. Father's new goals were: (1) address his drug and alcohol use; (2) learn parenting skills; (3) demonstrate financial and personal stability; (4) learn to plan long-term; and (5)

demonstrate mental and emotional stability. Father was not able to begin work on his goals while at SCI Camp Hill but had to wait until he arrived at his "home" prison of SCI-Mercer.

Father owns a house in New Castle, Pennsylvania, where he will reside upon his release from prison, and he expects to have a job upon his release.

CYS filed its petition to terminate Father's parental rights on January 22, 2014, pursuant to 23 Pa.C.S.A. §§ 2511(a)(1),(2), (8), and (b). The trial court entered its decree terminating Father's parental rights pursuant to 23 Pa.C.S.A. §§ 2511(a)(1), (2), (8), and (b) on December 10, 2014. Father timely appealed on January 2, 2015, and filed his statement of errors complained of on appeal on January 6, 2015.[2]

Father raises the following questions on appeal:

[1] Whether the [trial] court erred in finding that [CYS] proved by clear and convincing evidence that sufficient grounds existed to terminate the parental rights of [] Father[?]

[2] Whether the [trial] court erred in not finding that [CYS] failed to provide [] Father with reasonable efforts to promote reunification with [Child?]

[3] Whether the [trial] court erred in finding that [CYS] provided [sic] by clear and convincing evidence that it is in the best interest of [Child] that the rights of [] Father be terminated[?]

_____

[2] Because there was no objection or claim of prejudice from Appellee, we have accepted the late filing in reliance on our decision in *In re K.T.E.L.*, 983 A.2d 745 (Pa. Super. 2009).

(Father's Brief, at 5).

Our standard of review is as follows:

> . . . In an appeal from an order terminating parental rights, our scope of review is comprehensive: we consider all the evidence presented as well as the trial court's factual findings and legal conclusions. However, our standard of review is narrow: we will reverse the trial court's order only if we conclude that the trial court abused its discretion, made an error of law, or lacked competent evidence to support its findings. The trial judge's decision is entitled to the same deference as a jury verdict.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

Further, we have stated:

> Where the hearing court's findings are supported by competent evidence of record, we must affirm the hearing court even though the record could support an opposite result.
>
> > We are bound by the findings of the trial court which have adequate support in the record so long as the findings do not evidence capricious disregard for competent and credible evidence. The trial court is free to believe all, part, or none of the evidence presented, and is likewise free to make all credibility determinations and resolve conflicts in the evidence. Though we are not bound by the trial court's inferences and deductions, we may reject its conclusions only if they involve errors of law or are clearly unreasonable in light of the trial court's sustainable findings.

*In re M.G.*, 855 A.2d 68, 73-74 (Pa. Super. 2004) (citations omitted).

In order to affirm the termination of parental rights, this Court need only agree with any one subsection of Section 2511(a). *See In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*), *appeal denied*, 863 A.2d 1141 (Pa. 2004).

Requests to have a natural parent's parental rights terminated are governed by 23 Pa.C.S.A. § 2511, which provides, in pertinent part:

**§ 2511. Grounds for involuntary termination**

**(a) General rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

> (1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

> \* \* \*

**(b) Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(1), (b).

It is well-settled that a party seeking termination of a parent's rights bears the burden of proving the grounds to so do by "clear and convincing evidence," a standard that requires evidence that is "so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." ***In re T.F.***, 847 A.2d 738, 742 (Pa. Super. 2004) (citation omitted). Further,

A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with his or her physical and emotional needs.

*In the Interest of K.Z.S.*, 946 A.2d 753, 759 (Pa. Super. 2008) (citation omitted).

To terminate parental rights pursuant to section 2511(a)(1), the person or agency seeking termination must demonstrate "through clear and convincing evidence that: for a period of at least six months prior to the filing of the petition, the parent's conduct demonstrate[d] a[] settled purpose to relinquish parental rights or that the parent has refused or failed to perform parental duties." *In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa. Super. 2003) (citing 23 Pa.C.S.A. § 2511(a)(1)).

With respect to section 2511(a)(1), our Supreme Court has held:

Once the evidence establishes a failure to perform parental duties or a settled purpose of relinquishing parental rights, the court must engage in three lines of inquiry: (1) the parent's explanation for his or her conduct; (2) the post-abandonment contact between parent and child; and (3) consideration of the effect of termination of parental rights on the child pursuant to Section 2511(b).

*In re Adoption of Charles E.D.M., II*, 708 A.2d 88, 92 (Pa. 1998) (citation omitted). Further,

. . . the trial court must consider the whole history of a given case and not mechanically apply the six-month statutory provision. The court must examine the individual circumstances of each case and consider all explanations offered by the parent

facing termination of his or her parental rights, to determine if the evidence, in light of the totality of the circumstances, clearly warrants the involuntary termination.

***In re B., N.M.***, 856 A.2d 847, 855 (Pa. Super. 2004), *appeal denied*, 872 A.2d 1200 (Pa. 2005) (citations omitted).

The Adoption Act[3] provides that a trial court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S.A. § 2511(b). It does not make specific reference to an evaluation of the bond between parent and child, but our case law requires the evaluation of any such bond. ***See In re E.M.***, 620 A.2d 481, 483 (Pa. 1993). However, this Court has held that the trial court is not required by statute or precedent to order a formal bonding evaluation performed by an expert. ***See In re K.K.R.-S***., 958 A.2d 529, 533 (Pa. Super. 2008).

Concerning incarcerated persons, our Supreme Court has stated:

. . . incarceration is a factor, and indeed can be a determinative factor, in a court's conclusion that grounds for termination exist under § 2511(a)(2) where the repeated and continued incapacity of a parent due to incarceration has caused the child to be without essential parental care, control or subsistence and that the causes of the incapacity cannot or will not be remedied.

\* \* \*

. . . [W]e now definitively hold that incarceration, while not a litmus test for termination, can be determinative of the question of whether a parent is incapable of providing "essential parental

---

[3] 23 Pa.C.S.A. §§ 2101-2938.

- 7 -

care, control or subsistence" and the length of the remaining confinement can be considered as highly relevant to whether "the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent," sufficient to provide grounds for termination pursuant to 23 Pa.C.S. § 2511(a)(2).  *See e.g. Adoption of J.J.*, 515 A.2d [883,] 891 [(Pa. 1986)] ("[A] parent who is incapable of performing parental duties is just as parentally unfit as one who refuses to perform the duties."); *[In re] E.A.P.*, 944 A.2d [79,] 85 [(Pa. Super. 2008)] (holding termination under § 2511(a)(2) supported by mother's repeated incarcerations and failure to be present for child, which caused child to be without essential care and subsistence for most of her life and which cannot be remedied despite mother's compliance with various prison programs).  If a court finds grounds for termination under subsection (a)(2), a court must determine whether termination is in the best interests of the child, considering the developmental, physical, and emotional needs and welfare of the child pursuant to § 2511(b).  In this regard, trial courts must carefully review the individual circumstances for every child to determine, *inter alia*, how a parent's incarceration will factor into an assessment of the child's best interest.

*In re Adoption of S.P.*, 47 A.3d 817, 828, 830-31 (Pa. 2012).[4]

In response to Father's first issue, whether CYS presented sufficient evidence to terminate his parental rights pursuant to subsection (a), we quote the trial court with approval where it stated:

Gary Zarilla, the [CYS] caseworker assigned to [Child's] case, testified with respect to Father's compliance with the [CPP].  Father wrote to CYS upon placement in his assigned penitentiary.  Father informed CYS that he had signed up for a parenting class, but was placed on a waiting list for the class.  To

---

[4] The Supreme Court cited its decision in *In re: Adoption of McCray*, 331 A.2d 652, 655 (Pa. 1975), for the proposition that termination may be appropriate for an incarcerated parent who has failed to perform his parental duties for a six-month period of time.  *See In re Adoption of S.P.*, *supra* at 828.

date, Father has not completed a parenting class. Father did not complete a drug and alcohol assessment, and he has not maintained suitable housing for [Child]. Father's last visit with [Child] was on October 17, 2012, one month prior to his incarceration. During the three visits Father had with [Child] prior to [his] incarceration, [he] failed to behave appropriately. Furthermore, Father failed to provide CYS with releases for his service providers.

On May 1, 2013, Father was provided with a modified [CPP]. The second plan was designed to accommodate Father's ability to reach the goals during [his] incarceration. Under the second [CPP], Father had to inquire as to the availability of drug and alcohol services at his current facility; take all necessary steps to register for any drug and alcohol classes that may be available; learn parenting skills; demonstrate financial and personal stability; develop long-term planning goals and display mental and emotional stability.

Father did complete a drug and alcohol assessment at the Mercer State Correctional Institution, but documentation of Father's compliance indicates that Father completed the assessment following the filing of the Petition for Involuntary Termination. Similarly, Father signed up for parenting classes while incarcerated, but Father was put on a wait list for this program. Father did not establish any programs [sic] towards achieving any of the remaining goals under the second [CPP].

(Trial Court Opinion, 12/10/14, at 8-9).

The record demonstrates that Father's incarceration was not a factor in his refusal or inability to parent Child. Therefore, Father's first claim is without merit.

We also find the trial court's reasoning persuasive in its response to Father's second claim that CYS did not make reasonable efforts to reunite him with Child:

. . . [The trial c]ourt has not made any finding that CYS has failed to provide Father with reasonable efforts to promote

reunification with [Child]. In fact, the record clearly supports the alternative. In this case, CYS initially established a [CPP] with Father. Father displayed poor parenting skills and no compliance with any of the established goals. When Father became incarcerated and his circumstances changed, CYS established a second [CPP] that reevaluated Father's goals based upon his new situation. Again Father failed to establish any significant compliance with the second [CPP].

(*Id.* at 12).

Our Supreme Court recently rejected the argument that the provision of reasonable efforts by the county children's services agency is a factor in termination of the parental rights of a parent to a child. *See In re D.C.D.* 105 A.3d 662, 673-74, 676 (Pa. 2014) (rejecting suggestion that an agency must provide reasonable efforts to enable parent to reunify with child prior to termination of parental rights). Thus, based on our Supreme Court's holding in *In re D.C.D.*, we find no merit to Father's second argument.

Furthermore, the record establishes that termination is in the best interest of the Child. Child has been in placement with his half-siblings since he was nine months old. At the time of the hearing in this matter, he was three years of age. Child has had no contact with Father since October 17, 2012, more than two years prior to the termination hearing. Our examination of the record reveals that there is sufficient evidence to permit the trial court to conclude that there is no evidence of a bond between Father and Child. "[I]n cases where there is no evidence of a bond between a parent and child, it is reasonable to infer that no bond exists." *In re Adoption of J.M.*, 991 A.2d 321, 324 (Pa. Super. 2010) (citation omitted).

Our review of the record reveals that the trial court's decision to terminate Father's parental rights pursuant to 23 Pa.C.S.A. §§ 2511(a)(1) and (b) is supported by clear and convincing evidence, and that there was no abuse of the trial court's discretion. **See *In re L.M.***, ***supra*** at 511.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 6/2/2015